IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| LONNIE E. LARSON, | ) | CIVIL NO. 11-00272 SOM/BMK |
| Plaintiff, | ) ) | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS VERIFIED COMPLAINT |
| vs. | ) ) | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY; and TOM PETRUS & MILLER, LLC, | ) ) ) | |
| Defendants. | ) ) ) | |

ORDER GRANTING DEFENDANTS' MOTION TO DISMISS VERIFIED COMPLAINT

I.  INTRODUCTION.

Plaintiff Lonnie E. Larson claims to have been hit by lightning on February 26, 2002. See Verified Complaint ¶ 6, ECF No. 1, Apr. 26, 2011. At the time of the alleged lightning strike, Larson says he was working for Altres Staffing Inc., which was providing construction labor to JAS Glover. Id. Larson sought workers' compensation insurance benefits from Altres's carrier, Defendant Liberty Mutual Fire Insurance Company. Id. Liberty Mutual appears to have been concerned about potential insurance fraud and hired a private investigator to conduct surveillance of Larson. Id. ¶ 10 and Exhibit 1. Liberty Mutual denied Larson's workers compensation claim on July 7, 2002. Id. ¶ 15. In the aftermath of that denial, Larson ultimately filed the present lawsuit against Liberty Mutual and its former counsel, the law firm of Tom Petrus & Miller LLC, complaining that they obtained computer records relating to him

without authorization.  Defendants now move to dismiss Larson's claims.  The court grants the motion.

II.     FACTUAL BACKGROUND.

On or about November 22, 2002, Frank Stephenson, of Hyperion International Technologies, LLC, which says it was Larson's former employer, sent Liberty Mutual a facsimile letter. Id., Ex. 1.  This letter was addressed to a claims adjuster for Liberty Mutual and indicated that, from September 25, 2002, to November 5, 2002, Larson was working for Hyperion in Arizona. Id.  The letter stated:

> Your customer service was contacted last Tuesday (November 5, 2002) by telephone . . . and a report was made regarding a possible insurance fraud. . . . Since that report was made, I have discovered other pertinent information . . . and, since I have not heard anything further on this matter, I thought it best to send this letter via fax notifying you of the report and a few other details that are not in the report.
>
> The person filing this claim, Lonnie Larson, spent over a month in our offices (Hyperion International) in Tempe, AZ working on a project. . . . He arrived at Phoenix's Sky Harbor Airport on September 25th and departed for Hawaii on November 5th.  During that time, he walked from his apartment to our office (0.3 miles one way) four times a day. On weekends, he walked to and from shopping areas that vary in total round trip distances of between 3 and 6 miles.  He also assembled various components of equipment, lifted relatively heavy solar panels, sketched out diagrams, typed various letters and emails; for all intents and purposes, appeared to be a healthy, active man.

> While none of us dispute that Mr. Larson may
> have been struck by lightning on February 26,
> 2002, as he contends, the after effects, both
> physical and psychological, appear to be
> whatever he chooses them to be, and bother
> him whenever he thinks it is appropriate for
> his audiences.  For example, until the
> morning of his departure for Hawaii, he was
> as I have described in the previous
> paragraph.  However, for some strange reason,
> he required a wheelchair to get from airport
> curbside to the gate.
>
> The report I have referenced above contains
> the names of five other people in our offices
> who witnessed this behavior by Mr. Larson.
> They may, or may not be willing to testify to
> those facts, that is completely up to them.
> I, for one, believe Mr. Larson is trying to
> pull off a scam.

Facsimile Letter dated Nov. 10, 2002, from Frank Stephenson to Theresa Boller, attached to Verified Complaint as Exhibit 1, ECF No. 1-1.

Larson claims that Stephenson also sent facsimile transmissions to Liberty Mutual on November 10 and 26, 2002. Larson attaches to his Verified Complaint two cover sheets for transmissions on November 26, 2002.  The first states:

> Dear Karen:
>
> Thanks again for calling me last Friday,
> November 22, 2002.  Attached are copies of
> the documents I spoke to you about regarding
> the above referenced claim.  The other five
> witnesses I mentioned to you that were
> present between September 25, 2002 and
> November 5, 2002 are also employees of

> Hyperion. Let me know if you need their
> names, etc., or if you need additional
> information from us.

See ECF No. 1-2.

The second cover sheet states: "Dear Karen. More stuff. I have a document approximately 40 pages in length that amounts to a daily diary Lonnie kept to record his 'symptoms' – let me know if you need a copy." See ECF No. 1-3.

Larson alleges that "Stephenson acted as Liberty Mutual's agent in the acquisition, use and disclosure of . . . Larson's personal and private communications." Verified Complaint ¶ 16. Larson provides no factual support for his legal conclusion that Stephenson was acting as Liberty Mutual's agent. Larson says that he did not consent to Hyperion's obtaining of his private information (documents and emails) and that he "had no notice Hyperion would access his personal computers and/or Internet email servers to retrieve, intercept, use or disclose his confidential information." Id. ¶¶ 18-19. Larson alleges that he "was not an employee of Hyperion." Id. ¶ 19.

Larson alleges that Liberty Mutual gave his private information to its counsel, Defendant Tom Petrus & Miller, LLC, "during the course of litigation in civil action number 09-308." Id. ¶ 20. Larson further alleges that Tom Petrus & Miller further disclosed this information to "its partners, associates,

officers and/or employees . . . knowing or having reason to know that" the information was acquired illegally.  Id. ¶ 23.

Larson alleges that, by accessing his computer, Hyperion and Liberty Mutual caused him more than $5,000 in monetary loss in a one-year period, including the loss of workers' compensation payments[1] and his failure to recover damages in Civil Number 09-00308 SOM/BMK.  Id. ¶ 22.

Larson alleges that he is a "resident" of Hawaii, that Liberty Mutual is organized in and has a principal place of business in Massachusetts, and that Tom Petrus & Miller is a limited liability corporation with a principal place of business in Hawaii.  Id. ¶¶ 1-3.

On June 27, 2011, Liberty Mutual and Tom Petrus & Miller moved to dismiss Larson's Verified Complaint.  See ECF No. 9.  That motion is granted without a hearing pursuant to Local Rule 7.2(d).

III.    MOTION TO DISMISS STANDARD.

When reviewing motions to dismiss brought under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  If

---

[1]Larson's worker's compensation claim remains pending before the State of Hawaii, Department of Labor.  Id. ¶ 22.

matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003). Documents whose contents are alleged in a complaint and whose authenticity are not questioned by any party may also be considered in ruling on a Rule 12(b)(6) motion to dismiss. See Branch v. Tunnell, 14 F.3d 449, 453-54 (9th Cir. 1994).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). However, conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss. Sprewell, 266 F.3d at 988; Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996). Additionally, the court need not accept as true allegations that contradict matters properly subject to judicial notice or

allegations contradicting the exhibits attached to the complaint. Sprewell, 266 F.3d at 988.

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)) (internal quotation marks omitted); accord Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation"). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555. The complaint must "state a claim to relief that is plausible on its

face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949.

IV. ANALYSIS.

The Verified Complaint asserts seven causes of action: Count I--violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(4) and (g); Count II--violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(5) and (g); Count III--violation of the federal Stored Communications Act, 18 U.S.C. §§ 2701 and 2707; Count IV--violation of the federal Wiretap Act, 18 U.S.C. §§ 2511(1)(c) and (d), and 2520; Count V--state-law invasion of privacy claim; Count VI--state-law intentional infliction of emotional distress ("IIED") claim; and Count VII--state-law punitive damage claim.

> A. Counts I, II, and III Are Dismissed Because the Verified Complaint Fails to Allege Any Basis For Holding Liberty Mutual Responsible.

In Counts I and II of the Verified Complaint, Larson asserts that Liberty Mutual violated the federal Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(4) and (5), which states:

> Whoever--
>
> . . . .
>
> (4) knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the

>intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any 1-year period;
>
>(5)(A) knowingly causes the transmission of a program, information, code, or command, and as a result of such conduct, intentionally causes damage without authorization, to a protected computer; (B) intentionally accesses a protected computer without authorization, and as a result of such conduct, recklessly causes damage; or (C) intentionally accesses a protected computer without authorization, and as a result of such conduct, causes damage and loss;
>
>. . . .
>
>shall be punished as provided in subsection (c) of this section.

Under 18 U.S.C. §§ 1030(g), any person damaged by a violation of § 1030 may file a civil action against the alleged violator.

Count III of the Verified Complaint asserts that Liberty Mutual violated the federal Stored Communications Act, 18 U.S.C. §§ 2701, which provides in relevant part:

>whoever--(1) intentionally accesses without authorization a facility through which an electronic communication service is provided; or (2) intentionally exceeds an authorization to access that facility; and thereby obtains, alters, or prevents authorized access to a wire or electronic communication while it is in electronic storage in such system shall be punished as provided in subsection (b) of this section.

A civil remedy is provided in 18 U.S.C. § 2707 for violations of § 2701.

Counts I, II, and III of the Verified Complaint are brought only against Liberty Mutual and assert that Liberty Mutual is vicariously liable for Stephenson's and/or Hyperion's actions.  The Supreme Court has stated that it "is well established that traditional vicarious liability rules ordinarily make principals or employers vicariously liable for acts of their agents or employees in the scope of their authority or employment."  Meyer v. Holley, 537 U.S. 280, 285 (2003).  The court need not reach the issue of whether Liberty Mutual could be held liable as a matter of law for the violations alleged in Counts I, II, and III of the Verified Complaint, as there are no factual allegations supporting vicarious liability.

Although Larson alleges in paragraph 16 of the Verified Complaint that Stephenson was acting as Liberty Mutual's agent when Stephenson allegedly accessed Larson's information, no facts are alleged supporting an agency relationship.  For example, nothing in the Verified Complaint indicates that Stephenson was a Liberty Mutual employee or that Liberty Mutual had any control over him.  See, e.g., Burrey v. Pac. Gas & Elec. Co., 159 F.3d 388, 393 n.3 (9th Cir. 1998).  To the contrary, Exhibit 1 of the Verified Complaint shows that Stephenson is a regional supervisor for Hyperion.  Larson even concedes in his Opposition that Stephenson is not a Liberty Mutual employee.  See Opposition at 4, ECF No. 13.  At best, Larson alleges that Karen, a Liberty

Mutual employee, "requested" that Stephenson provide her with Larson's "personal and private communications."  Verified Complaint ¶ 16.  But a "request," without more, is insufficient to establish vicarious liability.  There are, for example, no allegations indicating that Stephenson or Hyperion was compelled to grant the request or had actual or apparent authority to act on Liberty Mutual's behalf.  See Frankl v. HTH Corp., __ F.3d __, 2011 WL 3250637, *27 (9th Cir. July 13, 2011).  Larson's conclusory allegation that Stephenson was Liberty Mutual's agent is insufficient to defeat the present motion.  See Spreewell, 266 F.3d at 988.  Without facts or an identified basis for holding Liberty Mutual liable for Stephenson's and/or Hyperion's actions, Counts I, II, and III fail to allege a claim upon which relief can be granted and are therefore dismissed.

> B. Count IV is Dismissed Because No Communication Was Intercepted During Transmission.

Count IV of the Verified Complaint alleges that Liberty Mutual and Tom Petrus & Miller violated the federal Wiretap Act, 18 U.S.C. §§ 2511(1)(c) and (d), which states:

> Except as otherwise specifically provided in this chapter any person who–
>
> . . . .
>
> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or

11

>           electronic communication in violation of this
>           subsection;
>
>                (d) intentionally uses, or endeavors to
>           use, the contents of any wire, oral, or
>           electronic communication, knowing or having
>           reason to know that the information was
>           obtained through the interception of a wire,
>           oral, or electronic communication in
>           violation of this subsection
>
>                . . . .
>
>           shall be punished as provided in subsection
>           (4) or shall be subject to suit as provided
>           in subsection (5).

Larson asserts a right to bring a civil action for a violation of § 2511 under 18 U.S.C. § 2520.

The portion of Defendants' motion seeking dismissal of Count IV is granted. In addition to the lack of factual detail supporting Liberty Mutual's vicarious liability, Count IV must be dismissed because there are no allegations that any communication was intercepted during transmission.

In Konop v. Hawaiian Airlines, Inc., 302 F.3d 868, 877-78 (9th Cir. 2002), the Ninth Circuit interpreted § 2511(1)(a)'s prohibition on intentionally "intercept[ing] . . . any wire, oral, or electronic communication." The Ninth Circuit held that, "to be 'intercepted' in violation of the Wiretap Act, [communications] must be acquired during transmission, not while it is in electronic storage." This definition appears applicable to §§ 2511(1)(c) and (d), meaning that those sections can only be violated when a defendant intentionally discloses, or endeavors

12

to disclose, or intentionally uses, or endeavors to use communications that the defendant knows or has reason to know were intercepted during the transmission of the communications. See Konop, 302 F.3d at 877-78. Larson alleges that the information was obtained from his "personal computers and or Internet email servers" and that the information was obtained "while it was in electronic storage." Verified Complaint ¶¶ 19 and 21. Because the Verified Complaint does not allege that Stephenson intercepted Larson's communications during their transmission, §§ 2511(1)(c) and (d) are inapplicable, and Count IV fails to state a claim upon which relief can be granted. See Konop, 302 F.3d at 877-78; Pines v. McLaughlin, 2011 WL 1361540 (S.D. Cal. Apr. 11, 2011) (ruling allegations insufficient under § 2511(1)(a) when they merely alleged that communications were obtained from stolen computers, not that they were acquired during transmission).

      C.    The Court Declines to Exercise Supplemental Jurisdiction Over the Remaining State-Law Claims.

The dismissal of Counts I through IV of the Verified Complaint leaves for adjudication the state-law claims for invasion of privacy, IIED, and punitive damages asserted in Counts V, VI, and VII. Because Larson has failed to allege facts demonstrating complete diversity, the only jurisdictional basis remaining for these claims is the court's supplemental jurisdiction.

Supplemental jurisdiction, unlike federal question or diversity jurisdiction, is not mandatory. A court may decline to exercise supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the state law claim substantially predominates over the claim or claims over which the district court has original jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. See 28 U.S.C. § 1367.

Supplemental jurisdiction is thus a doctrine of discretion, not of a plaintiff's right. City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 172 (1997); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966). When, as here, "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." Gibbs, 383 U.S. at 726. Such a dismissal is not "a mandatory rule to be applied inflexibly in all cases," but "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law

claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988).

This court has dismissed all of the claims over which it had original jurisdiction and identifies no factors making this case anything but the usual case in which supplemental jurisdiction is better declined. Larson's state-law claims are therefore dismissed without prejudice.

V.     CONCLUSION.

For the foregoing reasons, the court dismisses the Verified Complaint. Because Larson is proceeding pro se and because it may be possible for him to allege viable claims, Larson is given leave to file an Amended Complaint no later than September 2, 2011. Any Amended Complaint must be a complete document and may not incorporate anything by reference. If Larson's Amended Complaint asserts claims over which this court has original jurisdiction, Larson may reallege the state-law claims asserted in Counts V, VI, and VII of the original Complaint. Of course, in allowing Larson to reallege those claims, this court is not indicating that those claims are meritorious.

If Larson fails to timely file an Amended Complaint, the Clerk of Court is directed to automatically enter judgment in favor of Defendants and to close this case. If, on the other hand, Larson timely files an Amended Complaint, judgment will not

15

automatically be entered and this action will proceed based on the Amended Complaint.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 11, 2011.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Larson v. Liberty Mutual; Civil No. 11-00272 SOM/BMK; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS VERIFIED COMPLAINT