IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| LONNIE E. LARSON, | CIVIL NO. 11-00272 SOM/BMK |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED VERIFIED COMPLAINT |
| vs. | |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY; and TOM PETRUS & MILLER, LLC, | |
| Defendants. | |

ORDER GRANTING DEFENDANTS' MOTION TO
DISMISS THE FIRST AMENDED VERIFIED COMPLAINT

I.      INTRODUCTION.

Plaintiff Lonnie E. Larson claims to have been hit by lightning on February 26, 2002.  See First Amended Verified Complaint ¶ 6, Aug. 31, 2011, ECF No. 21.  At that time, Larson says, he was working for Altres Staffing Inc., which was providing construction labor to JAS Glover.  Id.  Larson sought worker's compensation insurance benefits from Altres's carrier, Defendant Liberty Mutual Fire Insurance Company.  Id.  Liberty Mutual appears to have been concerned about potential insurance fraud and hired a private investigator to conduct surveillance of Larson.  Id. ¶ 11.  Liberty Mutual denied Larson's worker's compensation claim on July 7, 2002.  Id. ¶ 16.  In the aftermath of that denial, on April 26, 2011, Larson filed the present lawsuit against Liberty Mutual and its former counsel, the law firm of Tom Petrus & Miller LLC, complaining that they had

obtained computer records relating to him without authorization.

See Verified Complaint, April 26, 2011, ECF No. 1.  Defendants

now move to dismiss Larson's First Amended Verified Complaint

pursuant to Rule 12(b)(6).  The court grants the motion.

II.      FACTUAL BACKGROUND.

On or about November 10, 2002, Frank Stephenson, of

Hyperion International Technologies, LLC, which says it was

Larson's former employer, sent a facsimile letter to Theresa

Boller, a claims adjuster for Liberty Mutual, and indicated that,

from September 25, 2002, to November 5, 2002, Larson had worked

for Hyperion in Arizona.  First Amended Verified Complaint Ex. 1.

The letter stated:

> Your customer service was contacted last
> Tuesday (November 5, 2002) by telephone . . .
> and a report was made regarding a possible
> insurance fraud. . . .  Since that report was
> made, I have discovered other pertinent
> information . . . and, since I have not heard
> anything further on this matter, I thought it
> best to send this letter via fax notifying
> you of the report and a few other details
> that are not in the report.
>
> The person filing this claim, Lonnie Larson,
> spent over a month in our offices (Hyperion
> International) in Tempe, AZ working on a
> project. . . .  He arrived at Phoenix's Sky
> Harbor Airport on September 25th and departed
> for Hawaii on November 5th.  During that
> time, he walked from his apartment to our
> office (0.3 miles one way) four times a day.
> On weekends, he walked to and from shopping
> areas that vary in total round trip distances
> of between 3 and 6 miles.  He also assembled
> various components of equipment, lifted
> relatively heavy solar panels, sketched out

diagrams, typed various letters and emails;
for all intents and purposes, appeared to be
a healthy, active man.

While none of us dispute that Mr. Larson may
have been struck by lightning on February 26,
2002, as he contends, the after effects, both
physical and psychological, appear to be
whatever he chooses them to be, and bother
him whenever he thinks it is appropriate for
his audiences.  For example, until the
morning of his departure for Hawaii, he was
as I have described in the previous
paragraph.  However, for some strange reason,
he required a wheelchair to get from airport
curbside to the gate.

The report I have referenced above contains
the names of five other people in our offices
who witnessed this behavior by Mr. Larson.
They may, or may not be willing to testify to
those facts, that is completely up to them.
I, for one, believe Mr. Larson is trying to
pull off a scam.

Facsimile Letter dated Nov. 10, 2002, from Frank Stephenson to

Theresa Boller, attached to First Amended Verified Complaint as

Exhibit 1, ECF No. 21-1.

Larson claims that on November 22, 2002, "Karen," a

Liberty Mutual employee, called Stephenson and requested personal

and private communications about Larson that Stephenson had

mentioned to her.[1]  First Amended Verified Complaint ¶ 19.

Larson claims that Stephenson faxed her the requested information

---

[1]  In the First Amended Verified Complaint, Larson cites to
Exhibit 2 as evidence of this.  However, Larson appears to have
inadvertently attached Exhibit 3 as Exhibit 2, as Exhibit 2 is
identical to Exhibit 3 and does not support the allegation for
which it is cited.

on November 26, 2002.  <u>Id.</u>  He also alleges that Stephenson later sent her Larson's "personal and private communications," such as Larson's medical records, emails, letters, and payroll records. <u>Id.</u>  Larson attaches to his First Amended Verified Complaint a cover sheet for transmissions on November 26, 2002, which states: "Dear Karen.  More stuff.  I have a document approximately 40 pages in length that amounts to a daily diary Lonnie kept to record his 'symptoms' – let me know if you need a copy."  First Amended Verified Complaint Ex. 3, ECF No. 21-3.  Larson alleges that Stephenson and/or Hyperion accessed and intercepted his emails.  First Amended Verified Complaint ¶ 21.

Larson says that he did not consent to Hyperion's obtaining of his private information and that he "had no notice Hyperion would access his personal computers and/or Internet email servers to retrieve, intercept, use or disclose his confidential information."  <u>Id.</u> ¶¶ 26-27.  Larson alleges that "Stephenson acted as Liberty Mutual's agent in the acquisition, use and disclosure of . . . Larson's personal and private communications."  First Amended Verified Complaint ¶ 22.  Larson also alleges that Stephenson and/or Hyperion "conspired" with Liberty Mutual to acquire Larson's private and personal communications.  <u>Id.</u> ¶ 24.

Larson says that Liberty Mutual gave his private information to its counsel, Defendant Tom Petrus & Miller, LLC,

"during the course of litigation in civil action number 09-308." Id. ¶ 28.  Tom Petrus & Miller allegedly disclosed this information to "its partners, associates, officers and/or employees . . . knowing or having reason to know that" the information was acquired illegally.  Id. ¶ 31.

By allegedly accessing Larson's computer, Hyperion and Liberty Mutual are alleged to have caused Larson more than $5,000 in monetary loss in a one-year period, including the loss of worker's compensation payments[2] and his failure to recover damages in Civil Number 09-00308 SOM/BMK.  Id. ¶ 30.

Larson initiated this lawsuit on April 26, 2011.  See Verified Complaint.  On August 11, 2011, this court dismissed Larson's Verified Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure and gave Larson leave to file an amended complaint.  Order Granting Defs' Mot. to Dismiss Verified Complaint, Aug. 11, 2011, ECF No. 17 ("Order Dismissing Verified Complaint").  Larson filed his First Amended Verified Complaint on August 31, 2011.  Defendants now move to dismiss that complaint pursuant to Rule 12(b)(6).

Larson did not timely file an opposition.  On December 30, 2011, he moved for an extension of time to file an

---

[2]  Notwithstanding this allegation in the First Amended Verified Complaint, Larson has now apparently prevailed on his worker's compensation claim before the State of Hawaii, Department of Labor.  Pl.'s Opp, to Def.'s Mot. to Dismiss at 8, Jan. 6, 2012, ECF No. 39.

opposition, which this court denied.  ECF No. 35.  On January 6,

2012, Larson sought to continue the hearing on this motion,

scheduled for January 9, 2012, on the ground that his medications

or health would hinder his ability to participate.  ECF No. 36.

That same day, Larson again moved for an extension of time to

file an opposition.  He also filed an opposition.  Even though it

was not mentioned in his motion regarding his opposition

memorandum, Larson may now be claiming that his disability

impaired his ability to prepare an opposition.  While he does not

even allege that this was so for the entire three months since

Liberty Mutual filed its motion to dismiss, the court now grants

his request to file a late opposition memorandum.

III.      <u>MOTION TO DISMISS STANDARD.</u>

          When reviewing motions to dismiss brought under Rule

12(b)(6) of the Federal Rules of Civil Procedure, the court is

generally limited to the contents of the complaint.  <u>Sprewell v.</u>

<u>Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir. 2001);

<u>Campanelli v. Bockrath</u>, 100 F.3d 1476, 1479 (9th Cir. 1996).  If

matters outside the pleadings are considered, the Rule 12(b)(6)

motion is treated as one for summary judgment.  <u>See</u> <u>Keams v.</u>

<u>Tempe Tech. Inst., Inc.</u>, 110 F.3d 44, 46 (9th Cir. 1997);

<u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996).  However,

courts may "consider certain materials--documents attached to the

complaint, documents incorporated by reference in the complaint,

or matters of judicial notice--without converting the motion to
dismiss into a motion for summary judgment." <u>United States v.
Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).  A document with
contents that are alleged in a complaint may also be considered
in ruling on a Rule 12(b)(6) motion to dismiss, if no party
questions its authenticity.  <u>See</u> <u>Branch v. Tunnell</u>, 14 F.3d 449,
453-54 (9th Cir. 1994), <u>overruled on other grounds by</u> <u>Galbraith
v. Cnty. of Santa Clara</u>, 307 F.3d 1119 (9th Cir. 2002).

On a Rule 12(b)(6) motion to dismiss, all allegations
of material fact are taken as true and construed in the light
most favorable to the nonmoving party.  <u>Fed'n of African Am.
Contractors v. City of Oakland</u>, 96 F.3d 1204, 1207 (9th Cir.
1996).  However, conclusory allegations of law, unwarranted
deductions of fact, and unreasonable inferences are insufficient
to defeat a motion to dismiss.  <u>Sprewell</u>, 266 F.3d at 988; <u>Syntex
Corp. Sec. Litig.</u>, 95 F.3d 922, 926 (9th Cir. 1996).
Additionally, the court need not accept as true allegations that
contradict matters properly subject to judicial notice or
allegations contradicting the exhibits attached to the complaint.
<u>Sprewell</u>, 266 F.3d at 988.

Dismissal under Rule 12(b)(6) may be based on either:
(1) lack of a cognizable legal theory, or (2) insufficient facts
under a cognizable legal theory.  <u>Balistreri v. Pacifica Police
Dept.</u>, 901 F.2d 696, 699 (9th Cir. 1988) (citing <u>Robertson v.

<u>Dean Witter Reynolds, Inc.</u>, 749 F.2d 530, 533-34 (9th Cir. 1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); <u>accord</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009) ("the pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation").  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  <u>Twombly</u>, 550 U.S. at 555.  The complaint must "state a claim to relief that is plausible on its face." <u>Id.</u> at 570.

IV.      <u>ANALYSIS.</u>

Larson's First Amended Verified Complaint asserts seven causes of action: Count I--violation of the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(4); Count II--violation of the federal Computer Fraud and Abuse Act, 18 U.S.C.

§ 1030(a)(5)(c); Count III--violation of the federal Stored Communications Act, 18 U.S.C. §§ 2701 and 2707; Count IV--violation of the federal Wiretap Act, 18 U.S.C. §§ 2511(1)(c),(d), and 2520; Count V--state-law invasion of privacy; Count VI--state-law intentional infliction of emotional distress ("IIED"); and Count VII--state-law punitive damages.

Larson asserted nearly identical causes of action in his Verified Complaint, supported by similar factual allegations. See Verified Complaint at 11-20.  On August 11, 2011, this court dismissed the Verified Complaint as to both Liberty Mutual and Tom Petrus & Miller for failure to allege a claim upon which relief could be granted.  Id. at 11-15.  As Larson has not cured the deficiencies this court raised in its previous order, the court now dismisses the First Amended Verified Complaint.

> A.   Counts I, II, and III Are Dismissed Because the
>      First Amended Verified Complaint Fails to Allege
>      Any Basis For Holding Liberty Mutual Responsible.

In Counts I and II of the First Amended Verified Complaint, Larson asserts that Liberty Mutual violated the federal Computer Fraud and Abuse Act, 18 U.S.C. §§ 1030(a)(4) and (5)(C), which states:

> Whoever--
>
>          . . . .
>
> (4) knowingly and with intent to defraud,
> accesses a protected computer without
> authorization, or exceeds authorized access,
> and by means of such conduct furthers the

> intended fraud and obtains anything of value,
> unless the object of the fraud and the thing
> obtained consists only of the use of the
> computer and the value of such use is not
> more than $5,000 in any 1-year period;
>
> (5) . . . (C) intentionally accesses a
> protected computer without authorization, and
> as a result of such conduct, causes damage
> and loss;
>
> .  .  .  .
>
> shall be punished as provided in subsection
> (c) of this section.

Count III of the First Amended Verified Complaint

asserts that Liberty Mutual violated the federal Stored

Communications Act, 18 U.S.C. § 2701, which provides in relevant

part:

> whoever--(1) intentionally accesses without
> authorization a facility through which an
> electronic communication service is provided;
> or (2) intentionally exceeds an authorization
> to access that facility; and thereby obtains,
> alters, or prevents authorized access to a
> wire or electronic communication while it is
> in electronic storage in such system shall be
> punished as provided in subsection (b) of
> this section.

A civil remedy is provided in 18 U.S.C. § 2707 for violations of

§ 2701.  Counts I, II, and III of the First Amended Verified

Complaint are brought only against Liberty Mutual.  Larson

asserts that Liberty Mutual is vicariously liable for

Stephenson's and/or Hyperion's actions.

In dismissing the Verified Complaint, this court held

that, although Larson alleged that Stephenson acted as Liberty

Mutual's agent when Stephenson allegedly accessed Larson's
information, no facts were alleged to support an agency
relationship.  Order Dismissing Verified Complaint at 10.  The
court explained:

> There are, for example, no allegations
> indicating that Stephenson or Hyperion was
> compelled to grant the request or had actual
> or apparent authority to act on Liberty
> Mutual's behalf.  See Frankl v. HTH Corp., __
> F.3d __, 2011 WL 3250637, *27 (9th Cir. July
> 13, 2011).  Larson's conclusory allegation
> that Stephenson was Liberty Mutual's agent is
> insufficient to defeat the present motion.
> See Sprewell, 266 F.3d at 988.  Without facts
> or an identified basis for holding Liberty
> Mutual liable for Stephenson's and/or
> Hyperion's actions, Counts I, II, and III
> fail to allege a claim upon which relief can
> be granted and are therefore dismissed.

Id.

Larson's First Amended Verified Complaint now includes
some statements to support an agency relationship.  Those
statements, however, still do not allege sufficient facts to
establish vicarious liability.  "[T]raditional vicarious
liability rules ordinarily make principals or employers
vicariously liable for acts of their agents or employees in the
scope of their authority or employment."  Meyer v. Holley, 537
U.S. 280, 285 (2003).  Larson acknowledges in his opposition that
Stephenson was not a Liberty Mutual employee.  Pl.'s Opp. to
Def.'s Mot. to Dismiss, Jan. 6, 2012, ECF No. 39 ("Opposition").

Liberty Mutual's vicarious liability must therefore rest on Stephenson's or Hyperion's role as an agent of Liberty Mutual's.

According to the Ninth Circuit, "Generally, for an agency relationship to exist, a principal must consent to the agent acting on his behalf and subject to his control, and the agent must consent to act for the principal." Holley v. Crank, 400 F.3d 667, 673 (9th Cir. 2005) (citing Restatement (Second) of Agency § 1 (1958)).[3] See also Batzel v. Smith, 333 F.3d 1018, 1035 (9th Cir. 2003) ("Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." (quoting a tentative draft of Restatement (Third) of Agency § 1.01)).

---

[3]   Section 1 of the Second Restatement of Agency states: "Agency is the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act."  Restatement (Second) of Agency § 1 (1958).  After Holley was decided, the Third Restatement of Agency was published.  The corresponding section in the Third Restatement, section 1.01, states: "Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."  Restatement (Third) of Agency § 1.01 (2006).

12

Larson alleges that Stephenson and Hyperion's "transmission of Mr. Larson's personal and confidential information was under the control and direction of Liberty Mutual." First Amended Verified Complaint ¶ 22. He alleges that Liberty Mutual gave Stephenson and Hyperion actual and apparent authority to obtain Larson's personal information on its behalf. Id. He states that Liberty Mutual and Stephenson and/or Hyperion consented to the arrangement, and that Liberty Mutual never refused the documents. Id. These statements are recitals of the elements of an agency relationship, not factual allegations. They are not enough to state a claim for relief. See Iqbal, 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice [to state a claim to relief that is plausible on its face].").

Larson does not allege sufficient facts to support his recitation of the elements of an agency relationship. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949. A plaintiff must show "more than a sheer possibility that a defendant has acted unlawfully." Id. The facts alleged in a complaint must nudge the claim from "conceivable" to "plausible." See id. at 1950.

13

Larson alleges only that Stephenson did not retrieve Larson's information until he received "authorization" from Liberty Mutual, that Liberty Mutual "asked" Stephenson to fax Larson's information, that Stephenson sent the documents only after Liberty Mutual "directed" Stephenson to send them, and that, even though Stephenson had additional information about Larson, the only reason he did not send the information was because Liberty did not direct him to do so. Id. ¶ 23. Even accepting these allegations as true, they do not allow the court to reasonably infer that Stephenson was an agent of Liberty Mutual's. That Liberty Mutual asked, directed, or authorized Stephenson to retrieve and send Larson's information does not, by itself, establish that Stephenson acted as an agent by complying with Liberty Mutual's request. Larson does not provide facts indicating that Stephenson agreed, or manifested assent, to act on Liberty Mutual's behalf and subject to its control. For example, there are no facts indicating that a relationship or agreement existed between Stephenson and Liberty Mutual.

Larson argues in his opposition that his exhibits show that Liberty Mutual manifested that Stephenson would act for Liberty Mutual by showing that Stephenson called Liberty Mutual and offered his services, that Liberty Mutual returned his call, and that Stephenson disclosed Larson's personal and confidential information after receiving Liberty Mutual's phone call and at

14

Liberty Mutual's behest.  He argues that Stephenson "clearly accepted this undertaking."  Opposition at 3.  However, the fact that Stephenson offered to provide Liberty Mutual with information, which Liberty Mutual received, does not show that either party assented to Stephenson's acting on behalf of, and subject to the control of, Liberty Mutual.

Despite Larson's argument that the "only reasonable inferences from the complaint's factual allegations are that Liberty Mutual did indeed control Mr. Stephenson's actions," Opposition at 3, there is no indication from the facts alleged that Stephenson was in fact subject to Liberty Mutual's control. Although Larson alleges that Liberty Mutual "directed" Stephenson, and that Stephenson did not act until "authorized," no factual allegation suggests that Liberty Mutual was in a position to dictate anything to Stephenson, to determine how much information he would provide, or to decide in what manner.  There is no allegation that Stephenson lacked the power to refuse to provide such materials had he wanted to refuse.

In addition, Larson's exhibits appear to contradict Larson's conclusory statement that Stephenson was controlled by Liberty Mutual.  In the letter from Stephenson to Boller, Exhibit 1, Stephenson voluntarily offered to provide Liberty Mutual with additional information about Larson.  Stephenson said that he "thought it best" to notify Liberty Mutual of various

15

details when he did not hear anything from Liberty Mutual, as Stephenson believed Larson was "trying to pull off a scam."  In the transmission sheet Stephenson sent to Liberty Mutual, Exhibits 2 and 3, Stephenson offered to send Liberty Mutual Larson's "daily diary."  These exhibits suggest that Liberty Mutual asked Stephenson to fax Larson's personal information only after Stephenson offered to give Liberty Mutual that information. While conceivable, it is simply not plausible on the facts alleged, and in light of the exhibits provided, that Stephenson or Hyperion was controlled by Liberty Mutual such that either was acting as Liberty Mutual's agent.

Larson's allegation that Stephenson acted with apparent authority also fails.  According to the Restatement on Agency, "Apparent authority is the power held by an agent or other actor to affect a principal's legal relations with third parties when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations."  Restatement (Third) § 2.03 (2006). Larson does not allege the presence of a third party who believed that Stephenson or Hyperion was Liberty Mutual's agent.  All dealings alleged were between Stephenson and Liberty Mutual employees.

Without factual allegations or an identified basis supporting Liberty Mutual's liability for Stephenson's or

Hyperion's actions, Counts I, II, and III fail to allege a claim upon which relief can be granted and are therefore dismissed.

> **B.   Count IV is Dismissed Because Larson Does Not Allege That Any Communication Involved an Interception During Transmission.**

Count IV of the First Amended Verified Complaint alleges that Liberty Mutual and Tom Petrus & Miller violated the federal Wiretap Act, 18 U.S.C. §§ 2511(1)(c) and (d), which states:

> Except as otherwise specifically provided in this chapter any person who—
>
> . . . .
>
> (c) intentionally discloses, or endeavors to disclose, to any other person the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection;
>
> (d) intentionally uses, or endeavors to use, the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication in violation of this subsection
>
> . . . .
>
> shall be punished as provided in subsection (4) or shall be subject to suit as provided in subsection (5).

Larson asserts a right to bring a civil action for a violation of § 2511 under 18 U.S.C. § 2520.

This court previously dismissed this claim on the ground that, "[i]n addition to the lack of factual detail supporting Liberty Mutual's vicarious liability, . . . there are no allegations that any communication was intercepted during transmission."  Order Dismissing Verified Complaint at 12.  The court here dismisses Count IV of the First Amended Verified Complaint on the same grounds.

In <u>Konop v. Hawaiian Airlines, Inc.</u>, 302 F.3d 868, 877-78 (9th Cir. 2002), the Ninth Circuit held that, for a wire communication "to be 'intercepted' in violation of the Wiretap Act, [the communication] must be acquired during transmission, not while it is in electronic storage."  In dismissing the Verified Complaint, this court held that "this definition appears applicable to §§ 2511(1)(c) and (d), meaning that those sections can only be violated when a defendant intentionally discloses, or endeavors to disclose, or intentionally uses, or endeavors to use communications that the defendant knows or has reason to know were intercepted during the transmission of the communications."  Order Dismissing Verified Complaint at 12-13 (citing <u>Konop</u>, 302 F.3d at 877-78).  Because the Verified Complaint did not allege that Stephenson intercepted Larson's communications during their transmission, the court ruled that §§ 2511(1)(c) and (d) were inapplicable.

Larson's First Amended Verified Complaint now alleges that Stephenson and/or Hyperion intercepted Larson's emails that were "stored on the Internet Service Provider, msn or msn.com," and that Stephenson and/or Hyperion "contemporaneously intercepted those electronic communications while in transmission."  First Amended Verified Complaint ¶ 21.  Larson states that "the act of downloading an email from an Internet Service Provider email account to a computer is a transmission and contemporaneous interception."  Id.  Larson also makes this argument in his opposition.  Larson appears to allege that by downloading Larson's emails from the internet service provider, where the emails were stored, Stephenson himself transmitted the emails, and then simultaneously "intercepted" them.  However, Stephenson's own alleged act of downloading Larson's emails from the internet service provider cannot serve as the transmission that Stephenson allegedly intercepted.  Stephenson could not have intercepted his own transmission.

In addition, Larson continues to allege that the emails were stored on the internet service provider when Stephenson allegedly downloaded them.  The Ninth Circuit has held that emails stored on an internet service provider are in electronic storage.  Theofel v. Farey-Jones, 359 F.3d 1066, 1075-77 (9th Cir. 2004) (holding that copies of emails stored on an internet service provider are deemed to be in electronic storage).  See

also <u>Bunnell v. Motion Picture Ass'n of America</u>, 567 F. Supp. 2d 1148, 1153 (C.D. Cal. 2007) (holding that emails were not "intercepted" in violation of the Wiretap Act when they were copied and forwarded while they were stored on an email server). As Larson alleges that Stephenson downloaded Larson's emails while they were on the internet service provider, Larson fails to state a claim under the Wiretap Act upon which relief can be granted.

> C.   The Court Declines to Exercise Supplemental
> <u>Jurisdiction Over the Remaining State-Law Claims.</u>

The remaining claims, Counts V through VII, assert state-law claims for invasion of privacy, IIED, and punitive damages.  Because Larson fails to allege facts demonstrating complete diversity,[4] the only jurisdictional basis remaining for these claims is the court's supplemental jurisdiction.

Supplemental jurisdiction, unlike federal question or diversity jurisdiction, is not mandatory.  A court may decline to exercise supplemental jurisdiction over a state law claim if: (1) the claim raises a novel or complex issue of state law; (2) the state law claim substantially predominates over the claim or claims over which the district court has original

---

[4]   Larson alleges that he is a "resident" of Hawaii, that Liberty Mutual is organized in and has a principal place of business in Massachusetts, and that Tom Petrus & Miller is a limited liability corporation with a principal place of business in Hawaii.  First Amended Verified Complaint ¶¶ 1-3.

jurisdiction; (3) the district court has dismissed all claims over which it has original jurisdiction; or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction. <u>See</u> 28 U.S.C. § 1367.

Supplemental jurisdiction is thus a doctrine of discretion, not of a plaintiff's right. <u>City of Chicago v. Int'l College of Surgeons</u>, 522 U.S. 156, 172 (1997); <u>United Mine Workers of Am. v. Gibbs</u>, 383 U.S. 715, 726 (1966). When, as here, "the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." <u>Gibbs</u>, 383 U.S. at 726. Such a dismissal is not "a mandatory rule to be applied inflexibly in all cases," but "in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine--judicial economy, convenience, fairness, and comity--will point toward declining to exercise jurisdiction over the remaining state-law claims." <u>Carnegie-Mellon Univ. v. Cohill</u>, 484 U.S. 343, 350 n.7 (1988).

This court dismisses all of the claims over which it has original jurisdiction and identifies no factors making this case anything but the usual case in which supplemental jurisdiction is better declined. The court therefore also dismisses Larson's state-law claims.

V.        <u>CONCLUSION.</u>

The court, having here granted Larson's second motion for leave to file a late opposition, dismisses the First Amended Verified Complaint.  This court gave Larson leave to file that pleading.  He has now failed for the second time to state a claim.  This is the third action Larson has filed in this court relating to the same worker's compensation claim.  <u>See</u> <u>Larson v. Liberty Mutual Fire Ins. Co.</u>, Civ. No. 09-00308, and <u>Larson v. Ching</u>, Civ. No. 08-00537.  At this point, it makes no sense to give Larson, even though he is proceeding <u>pro se</u>, innumerable opportunities to cure pleading deficiencies, particularly when the claims are implausible.  The Clerk of Court is directed to enter judgment in favor of Defendants and to close this case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, January 10, 2012.



  /s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Larson v. Liberty Mutual; Civil No. 11-00272 SOM/BMK; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED VERIFIED COMPLAINT

22